**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **SHERMAN RICHARDSON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 14-2351-JAR-TJJ** |
| **GENERAL MOTORS LLC,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Sherman Richardson brings this action against his employer, Defendant General

Motors, LLC, alleging employment discrimination under 42 U.S.C. § 1981, and retaliatory

discharge under Kansas law. Before the Court is Defendant's Motion for Summary Judgment

(Doc. 48). The motion is fully briefed and the Court is prepared to rule. For the reasons stated

below, the Court grants Defendant's motion for summary judgment.

## I.     Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no

genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[1]  In

applying this standard, the court views the evidence and all reasonable inferences therefrom in

the light most favorable to the nonmoving party.[2]  "There is no genuine issue of material fact

unless the evidence, construed in the light most favorable to the nonmoving party, is such that a

reasonable jury could return a verdict for the nonmoving party."[3]  A fact is "material" if, under

---

[1]Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[2]*City of Harriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[3]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

the applicable substantive law, it is "essential to the proper disposition of the claim."[4]  An issue

of fact is "genuine" if "'the evidence is such that a reasonable jury could return a verdict for the

non-moving party.'"[5]

The moving party initially must show the absence of a genuine issue of material fact and

entitlement to judgment as a matter of law.[6]  In attempting to meet this standard, a movant that

does not bear the ultimate burden of persuasion at trial need not negate the other party's claim;

rather, the movant need simply point out to the court a lack of evidence for the other party on an

essential element of that party's claim.[7]

Once the movant has met this initial burden, the burden shifts to the nonmoving party to

"set forth specific facts showing that there is a genuine issue for trial."[8]  The nonmoving party

may not simply rest upon its pleadings to satisfy its burden.[9]  Rather, the nonmoving party must

"set forth specific facts that would be admissible in evidence in the event of trial from which a

rational trier of fact could find for the nonmovant."[10]  To accomplish this, the facts "must be

identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated

therein."[11]  Rule 56(c)(4) provides that opposing affidavits must be made on personal knowledge

---

[4]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[5]*Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[7]*Adams v. Am. Guar. & Liab. Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[8]*Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[9]*Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[10]*Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671); *see Kannady*, 590 F.3d at 1169.

[11]*Adams*, 233 F.3d at 1246.

and shall set forth such facts as would be admissible in evidence.[12] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14] In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II. Uncontroverted Facts

The following facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiff as the nonmoving party.

Defendant General Motors LLC operates an automobile assembly plant in the Fairfax district of Kansas City, Kansas. Plaintiff Sherman Richardson is an African-American male who has been employed at the Fairfax plant as an hourly employee and member of a collective bargaining unit for more than thirty years. The terms of Plaintiff's employment are governed in part by the collectively-bargained GM-UAW National Agreement.

Plaintiff worked in a team leader role for Defendant for approximately eighteen years. Team leaders carry out additional roles and responsibilities in supporting other hourly team members, but do not have supervisory responsibilities. Prior to August 2013, Plaintiff served as a team leader in the chassis department. His direct supervisor was Victor Pereira, who is

---

[12]Fed. R. Civ. P. 56(c)(4).

[13]*Id.*; *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

Hispanic.  In his team leader role, Plaintiff led a team of several other hourly employees who are responsible for driving vehicles off the end of the assembly line into pits and booths where mechanical and electrical components of the vehicles are tested and adjusted.  Team members then drive the vehicles to either the shipping line or repair group.  Plaintiff was responsible for ensuring that his team kept its part of the assembly line moving while maintaining productivity, safety and quality standards.  Plaintiff filled in when team members took breaks or as otherwise necessary, he provided his team with supplies, and he coordinated repairs in the pits and booths.  Plaintiff also ran daily team meetings at the start of each shift based on an agenda provided by his supervisor.

On August 22, 2013, one of the members on Plaintiff's team was Jack Knapton, a Caucasian male.  On that date, Plaintiff was sitting on a platform above the pit area when Knapton, without warning, grabbed Plaintiff's leg and lifted it several feet upward, causing Plaintiff to lose his balance. Plaintiff was shocked and frightened because he narrowly avoided falling into the pit, which was approximately ten feet below where he had been sitting.  Plaintiff believed Knapton's actions constituted an assault and battery, and therefore should have subjected Knapton to discipline under the collective bargaining agreement.  Plaintiff immediately reported the incident to Pereira and to GM's Labor Relations department.  Casandra Tutt in the Labor Relations department investigated Plaintiff's claim.

Although the platform where Plaintiff had been sitting was marked in yellow, indicating a do-not-enter zone, Plaintiff previously had sat in the same location above the pit area without criticism, discipline, or warning.  Pereira had witnessed Plaintiff sitting there on prior occasions.  After he reported Knapton's conduct on August 22, 2013, Plaintiff was disciplined by Pereira for sitting on the platform above the pit.   He was given "joint counsel," which is the first step in

4

GM's disciplinary procedure. Plaintiff did not challenge this discipline, nor did he request an interview under the collective bargaining agreement procedures. Tutt disciplined Knapton for violating plant rules prohibiting horseplay, and he was suspended without pay for the balance of a shift plus three days. Knapton apologized to Plaintiff, which reduced his penalty to the balance of a shift plus one day.

After the August 2013 incident, Plaintiff felt subjected to a pattern of mistreatment by his coworkers and Pereira. The day after the incident, Pereira denied Plaintiff's request to visit plant medical in order to ice his leg, telling him that he could go on his break instead. Plaintiff wanted to rest during his break, so he never visited medical that day. Also that next day, Pereira instructed Plaintiff to stand at the end of the line, making it difficult for Plaintiff to observe his team.

In September 2013, Plaintiff discovered a handwritten note on Pereira's desk that read "Super lazy Sherman;" Plaintiff never brought the note to Pereira's attention. On another day in September, a different foreman filled in for Pereira, who instructed Plaintiff to catch the vehicles coming off the line, despite the fact that it was not Plaintiff's responsibility. Plaintiff suspects that this foreman knew that this was outside Plaintiff's assigned duties.

Also in September 2013, Pereira issued to Plaintiff a disciplinary notice and written warning for failing to properly complete a training certification for another employee, which was discovered following an accident in which a vehicle was damaged. Plaintiff did not protest the discipline, nor did he request an interview under the applicable collective bargaining agreement procedures before the discipline was issued. The employee who Plaintiff was training was also disciplined in the form of suspension without pay for his role in damaging the vehicle.

In December 2013, Mario Davis, an African-American team leader who worked on a different shift, yelled at Plaintiff, "Sherman, do your motherfucking job," in the presence of Pereira and other team members.  He was not reprimanded.  Davis also told Plaintiff on multiple occasions, "I can read," which Plaintiff interpreted as "messing with him" because he was known to carry around a dictionary and ask others for definitions of certain words.  On another occasion at a team meeting, Davis said to Plaintiff, "They don't like you."  On January 6, 2014, Plaintiff reported Davis' comments to the Labor Relations department; he put the complaints in writing. The next day, Pereira yelled at Plaintiff about vehicles falling into the pit.  In early 2014, Davis called Plaintiff a "stupid motherfucker" in a team leader meeting and told Plaintiff that he would not be treated "like your little bitch."  Davis learned about the Knapton incident sometime after it happened; he recalls Plaintiff telling him about it.

Another team leader, Kenney Thomsen, told Plaintiff at a team leader meeting to "take your finger out of your ass."   Plaintiff also felt that other team members generally treated him with "disdain and general disrespect" during the fall 2013, into January 2014.  He was denied a place to sit during team meetings and in the cafeteria.  And members of Plaintiff's team worked slowly or left the chassis area without authorization, causing vehicles to bottleneck.

Plaintiff worked in the chassis department until he took a leave of absence from GM in January 2014.  As of the date of his deposition on August 18, 2015, he continued to be employed by GM.  He continues to receive compensation and health insurance coverage.  His leave was due to mental health issues that he believes were caused by his mistreatment at GM.  Plaintiff was admitted to inpatient mental health treatment on multiple occasions and these health issues have prevented him from returning to the workplace.

## III.    Discussion

### A.    Discrimination under 42 U.S.C. § 1981

Plaintiff alleges discrimination on the basis of race in violation of 42 U.S.C. § 1981 under a constructive discharge theory.  The parties agree that the disparate treatment claim must be decided under the familiar *McDonnell Douglas v. Green*[16] burden-shifting framework because Plaintiff relies on circumstantial evidence.[17]  Under *McDonnell Douglas*, the plaintiff initially bears the burden of production to establish a prima facie case of discrimination.[18]  The burden of establishing the prima facie case is "not onerous."[19]  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a facially nondiscriminatory reason for its actions.[20]  If the defendant articulates a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to present evidence from which a jury might conclude that the defendant's proffered reason is pretextual, that is, "unworthy of belief."[21]

To establish a prima facie case of race discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination.[22]

---

[16]411 U.S. 792, 802–05 (1973).

[17]*See, e.g.*, *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).

[18]*McDonnell Douglas*, 411 U.S. at 802.

[19]*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 238, 253 (1981).

[20]*Id.*; *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1113 (10th Cir. 2007).

[21]*Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998) (quoting *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)).

[22]*EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 & n.5 (10th Cir. 2007) (discussing how elements of prima facie case in discrimination cases vary depending on context).  In the Tenth Circuit, the prima facie case no longer requires a "similarly-situated person" comparison.  *See Sorbo v. UPS*, 432 F.3d 1169, 1173 (10th Cir. 2005).  While the third element may be shown by evidence that the employer treated similarly-situated employees more favorably, "such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case." *Id.*

There is no dispute that Plaintiff is a member of a protected class. Defendant argues that

summary judgment is warranted because there is no evidence that he suffered an adverse

employment action, or that any alleged adverse employment action took place under

circumstances giving rise to an inference of discrimination.

The adverse employment element "includes 'significant change in employment status,

such as hiring, firing, failing to promote, reassignment with significantly different

responsibilities, or a decision causing a significant change in benefits.'"[23] Plaintiff concedes that

he was not discharged by GM; he asserts that the adverse employment action here was a

constructive discharge. To establish constructive discharge, Plaintiff must show that "working

conditions became so intolerable that a reasonable person in the employee's position would have

felt compelled to resign."[24] The plaintiff's burden is substantial,[25] and his subjective views of

the situation are not relevant.[26] Whether a plaintiff was constructively discharged is a question

of fact, and "judgment as a matter of law is only appropriate if the evidence is susceptible to but

one interpretation."[27]

It is uncontroverted that Plaintiff subjectively felt that his working conditions were poor

and that his coworkers retaliated against him for reporting the Knapton incident. Further,

Defendant does not controvert that Plaintiff suffers from mental health issues that required him

to take a medical leave of absence. However, there is no evidence in the record to suggest that a

reasonable person in Plaintiff's position would have felt compelled to resign; indeed, Plaintiff

---

[23]*Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032–33 (10th Cir. 2004)).

[24]*Penn. State Police v. Suders*, 542 U.S. 129, 141 (2004).

[25]*Strickland v. UPS.*, 555 F.3d 1224, 1228 (10th Cir. 2009).

[26]*Keller v. Crown Cork & Seal USA, Inc.*, 491 F. App'x 908, 915 (10th Cir. 2012).

[27]*Id.*

has not resigned.  Unlike in *Strickland*, where the evidence was ambiguous about whether the

plaintiff intended to resign, or instead intended to take an extended leave, there is no issue of fact

in this case.[28]  The parties agree that Plaintiff has taken a medical leave of absence in this case.

Plaintiff acknowledged in his deposition that he continues to be compensated and that he

receives health insurance benefits.

Even if the evidence was ambiguous about whether Plaintiff took a medical leave of

absence or resigned, he has not submitted any evidence that he had no other choice but to resign

under the circumstances of this case.[29]  There is no objective medical evidence in the record that

attributes Plaintiff's mental health issues to his workplace conditions.  In fact, the only evidence

submitted in support of Plaintiff's constructive discharge claim is his own affidavit.  While his

affidavit establishes his subjective belief that his work environment caused him to have an

emotional breakdown, the objective evidence is susceptible to only one interpretation.  The

mistreatment alleged by Plaintiff involved two individuals directing profanity at him, one "joint

counsel," one written disciplinary warning, and a series of slights by his coworkers.  Plaintiff

found a note on Pereira's desk calling him lazy, but he is not aware who wrote the note and it

was never addressed further.  The Tenth Circuit has consistently held that such treatment does

not suffice for the plaintiff to meet his "substantial" burden of showing that a reasonable person

in Plaintiff's position would have felt compelled to resign.[30]  There is no evidence in the record

that Plaintiff should have felt that his job was in jeopardy, or that Plaintiff had job duties taken

---

[28]*See Strickland*, 555 F.3d at 1229.

[29]*Baca v. Sklar*, 398 F.3d 1210, 1218 (10th Cir. 2005).

[30]*See, e.g.*, *id.*; *Kelley*, 491 F. App'x at 915; *Tran v. Trs. of State Colls.*, 355 F.3d 1263, 1271 (10th Cir. 2004).

away from him, or that he was not provided with support to perform his job when requested.[31] Plaintiff faced no job performance issues other than the single disciplinary warning about his team member's certification, and in that instance, there were no further consequences. The Court finds that a reasonable person in Plaintiff's position would not have found the working conditions at GM intolerable and thus, Plaintiff has failed to establish a genuine issue of material fact about whether he was constructively discharged.

Because Plaintiff has failed to show a genuine issue of material fact as to whether he was subjected to an adverse employment action, summary judgment is granted on his race discrimination claim.

**B.     Retaliation Under Kansas Law**

Kansas is an at-will employment jurisdiction, meaning that absent an express or implied contractual agreement an employer is free to terminate employment at will.[32] The Kansas Supreme Court, however, has recognized an exception to the at-will employment doctrine for a common law tort of retaliatory discharge.[33] The exception applies "to protect a strongly held state public policy from being undermined."[34] In *Palmer v. Brown*, the Kansas Supreme Court held that "termination of an employee in retaliation for the good faith reporting of a serious infraction of such rules, regulations, or the law by a co-worker or an employer to either company management or law enforcement officials (whistle-blowing) is an actionable tort."[35] The court

---

[31]*See Strickland*, 555 F.3d at 1229–30 (finding summary judgment not appropriate on constructive discharge claim where evidence showed the plaintiff believed her job was in jeopardy, that she was told by her supervisors repeatedly that her performance was inadequate, and she was not provided job performance support when she requested it).

[32]*Flenker v. Willamette Indus., Inc.*, 967 P.2d 295, 298 (Kan. 1998) (citing *Johnston v. Farmers Alliance Mutual Ins. Co.*, 545 P.2d 312 (Kan. 1976)).

[33]*Id.*

[34]*Campbell v. Husky Hogs, L.L.C.*, 255 P.3d 1, 4 (Kan. 2011).

[35]752 P.2d 685, 689–90  (Kan. 1988).

enumerated the following requirements to maintain an action for retaliatory discharge based on

whistleblowing:

> To maintain such action, an employee has the burden of proving by clear and
> convincing evidence, under the facts of the case, a reasonably prudent person
> would have concluded the employee's co-worker or employer was engaged in
> activities in violation of rules, regulations, or the law pertaining to public health,
> safety, and the general welfare; the employer had knowledge of the employee's
> reporting of such violation prior to discharge of the employee; and the employee
> was discharged in retaliation for making the report. However, the whistle-blowing
> must have been done out of a good faith concern over the wrongful activity
> reported rather than from a corrupt motive such as malice, spite, jealousy or
> personal gain.[36]

A burden shifting analysis applies to these claims, so if the employee is able to make out a prima

facie case through clear and convincing evidence, the burden shifts back to the employer "to

present evidence that the employee was terminated for a legitimate reason, at which point the

burden shifts back to the employee to provide evidence that the reason given by the employer

was pretextual."[37]

Here, Plaintiff argues that he was retaliated against for reporting that Knapton assaulted

him. Defendant urges that a reasonably prudent person would not have concluded that Knapton

was engaged in conduct that violated "rules, regulations, or the law pertaining to public health,

safety, and the general welfare," that Plaintiff was not discharged, and that there is no evidence

the mistreatment alleged by Plaintiff was caused by his filing the Knapton complaint. The Court

assumes without deciding that Plaintiff reasonably believed Knapton assaulted him on August

22, 2013, which was in violation of a law pertaining to the general welfare.[38] But for the reasons

already explained, there is no genuine issue of material fact about whether Plaintiff was

---

[36]*Id.*

[37]*Shaw v. S.W. Kan. Groundwater Mgmt. Dist. Three*, 219 P.3d 857, 862 (Kan. Ct. App. 2009).

[38]*See Moore v. Philips Elecs. N.A. Corp.*, No. 14-2334-DDC, 2015 WL 5210188, at *9 (D. Kan. Sept. 3, 2015) (explaining that reporting an assault could "theoretically suffice for establishing whistleblower protection" (quoting *Cory v. City of Basehor*, No. 12-1257, 2014 WL 3396273, at *10 (D. Kan. July 11, 2014)).

discharged from GM.  And on this retaliatory discharge claim, the prima facie case has a more exacting burden of proof than the prima facie case on Plaintiff's § 1981 claim.  A reasonable jury could not conclude by clear and convincing evidence that Plaintiff was constructively discharged.

The Court likewise concludes that Plaintiff has not come forward with clear and convincing evidence that the alleged mistreatment by his coworkers and Pereira was retaliatory.  Although Plaintiff was spoken to harshly and shunned by some employees, there is no evidence other than Plaintiff's conclusory assertions that these employees' were reacting to Plaintiff's report.  Although Plaintiff received a joint counsel for sitting in an unauthorized area at the time of the Knapton incident, Plaintiff does not dispute that he was in fact sitting in an unauthorized area at the time, or that Knapton was disciplined more harshly.  Nor can Plaintiff dispute that there he suffered no further discipline after the verbal joint counsel or that it had no effect on his job security.  For all of these reasons, the Court grants summary judgment in favor of Defendant on the retaliatory discharge claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion for Summary Judgment (Doc. 48) is **granted**.

**IT IS SO ORDERED.**


Dated: <u>March 1, 2016</u>

            S/ Julie A. Robinson
            JULIE A. ROBINSON
            UNITED STATES DISTRICT JUDGE